# DAVID RUSI 2011 IRREVOCABLE TRUST

***THIS AGREEMENT*** made and dated the 31st day of October, 2011, between SELIM RUSI, currently residing at 177 Benedict Road, Staten Island, New York (hereinafter sometimes referred to as the "Grantor"), and ILIRJAN RUSI, currently residing at 72 Cromwell Circle, Staten Island, New York (hereinafter sometimes referred to individually as a "Trustee" and collectively with any and all Successors as the "Trustees").

## ARTICLE ONE: FUNDING THE TRUST

A. The Grantor transfers to the Trustees and the Trustees accept the property listed in Schedule "A" to be held and administered according to the terms of this Trust.

B. The Grantor and anyone else may transfer additional property to the Trustees, to be held and administered according to the Trust's terms.

C. The Grantor retains no right, title, or interest in any Trust property.

## ARTICLE TWO: IRREVOCABILITY

A. This Trust and all interests in it are irrevocable, and the Grantor has no power to alter, amend, revoke, or terminate any trust provision or interest, whether under this Trust or any statute or other rule of law.

B. This Trust shall be known as the "DAVID RUSI 2011 IRREVOCABLE TRUST" and it shall be sufficient that it be referred to as such in any deed, assignment, bequest or devise.

**ARTICLE THREE: ANNUAL DEMAND POWER**

During the Grantor's life, the following demand powers shall exist with respect to contributions to the Trust:

A. Immediately following any contribution to the Trust (including for the year of the Trust's creation, the property initially funding this Trust), the Grantor's son, DAVID RUSI, if living, shall have the right to withdraw from the principal of the Trust the value of such contribution, subject to the limitation set forth in this Paragraph A. hereinbelow. If the value of any contribution exceeds the aforesaid amount withdrawable by the Grantor's said son, then each of the Grantor's said son's then living children shall have the right to withdraw from the principal of such trust such excess amount, divided by the number which equals the sum of the Grantor's said son's children living at the time of such contribution, provided that the amount which may be withdrawn by each of the Grantor's said son's living children shall not exceed the limitation set forth in this Paragraph A. hereinbelow. The Grantor's son and his children are hereinafter sometimes referred to in this Article individually as "Holder" and collectively as "Holders".

Notwithstanding the foregoing, the total withdrawals by any Holder for any calendar year with respect to the aggregate contributions made to the Trust during such year by any donor shall not exceed the maximum amount excludible from such donor's taxable gifts to such Holder for such year under Section 2503(b) of the Internal Revenue Code of 1986, as it may be amended from time to time, (hereinafter sometimes referred to as the "Code"), taking into account, for a married donor, Section 2513 of the Code, and to the extent that any Holder shall be subject to this limitation, then solely for purposes of this Article, such Holder shall not be treated as living at the time that the contribution of such excess amount is made by such donor to this Trust. If

any Holder demands and receives a distribution in excess of the amount he or she is authorized to receive under this Paragraph A., the Trustees shall immediately notify such person in writing, requiring the prompt repayment of such excess amount. This demand power takes precedence over any other power or discretion granted to the Trustees or any other person. The sums paid out to any Holder pursuant to this demand power shall be a reduction of their ultimate share of Trust proceeds.

B. With respect to the demand powers created under this Article Three, the following rules shall apply:

1. The Holders can exercise this demand power by a written request delivered to the Trustees.

2. If any Holder is unable to exercise this demand power because of a legal disability, including minority, his or her parents (if the Holder is a minor), or any other legally authorized personal representative, including (but not limited to) a guardian, committee, or conservator, may make the demand on the Holder's behalf. However, in no event can Grantor make the demand for any Holder, regardless of the Grantor's relationship to him or her.

3. The Trustees must reasonably notify the person who would exercise a Holder's demand power of its existence and of any contributions made to the Trust that are subject to the power.

4. The demand powers created under this Article Three are generally non-cumulative and lapse on the earlier of the last day of the calendar year in which the contribution is made, or thirty (30) calendar days following the date of the transfer to which such power relates, if sooner. However, if any person holding such a demand power fails to exercise it within this thirty (30) day period, then it shall continue in existence to the extent that the amount

subject to such exercise will exceed the greater of Five Thousand Dollars ($5,000.00) or five percent (5.00%) of the aggregate value of the assets out of which such demand power could be satisfied, valued as of the date of contribution. For this purpose, the amount subject to the exercise of a demand power includes all amounts over which such Holder had, with respect to this Trust, a demand power that expired during the same calendar year, and all unexpired demand powers with respect to this Trust as to any prior contributions from the same or any prior calendar year. Such continuing demand power shall lapse only to the extent that the amounts subject to such demand power, together with all other amounts subject to demand powers granted to the same Holder, shall not exceed the greater of Five Thousand Dollars ($5,000.00) or five percent (5.00%) of the aggregate value of the assets out of which such demand power could be satisfied. Any reference to Five Thousand Dollars ($5,000.00) or five percent (5.00%) of the aggregate value of the assets out of which a demand power can be satisfied shall be determined annually on the last day of the calendar year and shall not be increased on account of any failure to demand a distribution in a prior year.

5. The Trustees may satisfy any Holder's demand for a distribution by distributing cash, other assets, or fractional interests in other assets, as the Trustees deem appropriate. Without limiting the Trustee's power to select assets to satisfy a demand, Grantor prefers that cash or tangible assets normally be distributed before life insurance policies and other intangible assets, unless the Trustees decide that another selection is warranted.

6. "Contribution" means any cash or other assets transferred to the Trustees to be held as part of the Trust's funds. The amount of any contribution is its federal gift tax value, as determined by the Trustees at the time of the transfer.

7. A person who makes a contribution to any Trust created under this instrument may, by written instrument delivered to the Trustees at the time of such contribution and with respect solely to the contribution then being made, do one or more of the following:

a. Exclude any Holder who would otherwise have a demand power from exercising that power as to such new contribution;

b. Increase or decrease the amount subject to any Holder's demand power as to such new contribution; and

c. Change the period during which any Holder's demand power as to such new contribution may be exercised. No such direction may in any way alter, amend, or change any Holder's demand power with respect to any prior contributions.

**ARTICLE FOUR: TRUST DISTRIBUTIONS AND ADMINISTRATION**

The Trustees shall hold and administer all Trust property as follows:

A. During the lifetime of the Grantor, the Trustees may, but are not required to, use some or all of the Trust's net income and principal to pay premiums on policies of life insurance on the life of the Grantor.

B. During the lifetime of the Grantor, the Trustees, at any time and from time to time, may pay to or apply for the benefit of the Grantor's son, DAVID RUSI, and the Grantor's said son's then living issue, out of the Trust's income and principal such sum or sums, including the whole thereof, in such amounts and proportions without any obligation to make equal payments as the Trustees, in their absolute discretion, deem appropriate for any said beneficiary's comfort and general welfare, adding to principal on the last day of the calendar year any income not so paid or expended.

C. In the event that the Grantor's son, DAVID RUSI, shall predecease the Grantor, and the Grantor's said son shall leave no issue then surviving, then the Trustees shall continue to hold and administer all of the Trust property and at any time and from time to time, may pay to or for the benefit of the Grantor's surviving children and their issue, out of the Trust's income and principal such sum or sums, including the whole thereof, in such amounts and proportions without any obligation to make equal payments as the Trustees, in their absolute discretion, deem appropriate for any said beneficiary's comfort and general welfare, adding to principal on the last day of the calendar year any income not so paid or expended.

D. The Trustees shall have absolute discretion to determine the conditions, whether outright, in trust (including, but not limited to, any trust established for the benefit of any the Grantor's children, including the trusts established concurrently herewith) or otherwise, under which any such distribution shall be made to any beneficiary hereunder. An invasion may be authorized even though it may have the effect of greatly reducing or exhausting the principal of this Trust.

E. Notwithstanding anything to the contrary contained herein this Article Four, no court shall have the power to order the distribution of any amount of Trust property under this Article Four, as this provision is specifically intended to negate and eliminate any discretion granted to any court under Section 7-1.6 of the New York Estates, Powers and Trusts Law, as it may be amended from time to time, (hereinafter sometimes referred to as the "EPTL"), or any comparable provision under any other state's law.

F. The Trustees will not, however, use any income or principal of the trust estate in a manner that would discharge the Grantor's legal support obligations or give him any pecuniary benefit.

G. Upon the death of the Grantor, the Trustees shall distribute any undistributed income and the remaining principal balance of this Trust to the Grantor's son, DAVID RUSI, subject to the terms and provisions of Article Five hereof, or if the Grantor's said son shall not then be surviving, then to the Grantor's said son's issue then surviving, per stirpes, subject to the terms and provisions of Article Six hereof. In the event that neither the Grantor's said son nor any of his issue shall then be surviving, then the Trustees shall distribute any undistributed income and the remaining principal balance of this Trust to the Grantor's issue then surviving, per stirpes, subject to the terms and provisions of Articles Five and/or Six hereof, as the case may be.

**ARTICLE FIVE: TRUST FOR THE BENEFIT OF ANY OF THE GRANTOR'S CHILDREN**

After the death of the Grantor, if any Trust property shall become distributable to any of the Grantor's children (hereinafter sometimes referred to as a "Child Beneficiary"), then the Trustees shall hold and administer each such Child Beneficiary's property in a separate trust as follows:

A. The Trustees, at any time and from time to time, may pay to or apply for the benefit of each Child Beneficiary out of the net income and principal of such Child Beneficiary's trust such sum or sums, including the whole thereof, as the Trustees, in their absolute discretion, deem appropriate for any said Child Beneficiary's health, maintenance, education or support, adding to principal on the last day of the calendar year any income not so paid or expended.

B. In addition to the payment of a Child Beneficiary's health, maintenance, education or support, the Trustees, at any time and from time to time, may pay to or apply for the

benefit of each Child Beneficiary out of the net income and principal of such Child Beneficiary's trust such sum or sums, including the whole thereof, as the Trustees, in their absolute discretion, deem appropriate for any said Child Beneficiary's comfort and general welfare, adding to principal on the last day of the calendar year any income not so paid or expended. An invasion may be authorized even though it may have the effect of greatly reducing or exhausting the principal of a Child Beneficiary's trust.

C. Notwithstanding anything to the contrary contained in Paragraphs A. and B. hereinabove, no court shall have the power to order any distribution as this provision is specifically intended to negate and eliminate any discretion granted to any court under Section 7-1.6 of the EPTL or any comparable provision under any other state's law.

D. In accomplishing the objective of reducing wealth transfer taxes, the Trustees are encouraged to provide such Child Beneficiary with the liberal use and enjoyment of his or her trust assets and property (free of charge) rather than make an outright distribution of the trust assets to the Child Beneficiary. The Trustees shall have broad discretion in withholding distributions and providing the Child Beneficiary with the use and enjoyment of the trust assets and property, after taking into account all factors the Trustees shall deem relevant, including, but not limited to, immediate and future income and transfer taxes.

E. The Trustees shall have absolute discretion to determine the conditions, whether outright, in trust (including, but not limited to, any trust established for the benefit of any Child Beneficiary following the date hereof) or otherwise, under which any such distribution shall be made to any Child Beneficiary.

F. Upon the death of a Child Beneficiary, the Trustees shall distribute any undistributed income and the remaining principal balance of such Child Beneficiary's trust to

such Child Beneficiary's issue then surviving, per stirpes, or if such Child Beneficiary shall leave no issue then surviving, then to the issue then surviving, per stirpes, of whichever of the Grantor's children is a lineal ancestor of such Child Beneficiary, or if such lineal ancestor leaves no issue then surviving, then to the Grantor's issue then surviving, per stirpes; provided, however, that any distributions under this Paragraph F. shall be subject to the terms and provisions of this Article Five and/or Article Six hereof, as the case may be.

**ARTICLE SIX: TRUST FOR ANY BENEFICIARY UNDER THE AGE OF THIRTY-FIVE (35) YEARS**

After the death of the Grantor, if any Trust property shall become distributable to any beneficiary, other than any of the Grantor's children, who is under the age of thirty-five (35) years, (hereinafter sometimes referred to as a "Secondary Beneficiary"), then the Trustees shall hold and administer each such Secondary Beneficiary's property in a separate trust as follows:

A. Until a Secondary Beneficiary attains the age of twenty-one (21) years, the Trustees shall apply to such Secondary Beneficiary's health, maintenance, education or support so much of the income and principal from such Secondary Beneficiary's trust, including the whole thereof, as may be necessary and proper, adding to principal on the last day of the calendar year any income not so paid or expended.

B. Once a Secondary Beneficiary attains the age of twenty-one (21) years, the Trustees shall thereafter pay over to such Secondary Beneficiary all the net income from such Secondary Beneficiary's trust in at least quarter-annual payments as nearly equal as may be practicable.

C. Once a Secondary Beneficiary attains the age of twenty-five (25) years, the Trustees shall pay over to such Secondary Beneficiary one-third (⅓) of the principal then remaining of such Secondary Beneficiary's trust, outright and free of trust.

D. Once a Secondary Beneficiary attains the age of thirty (30) years, the Trustees shall pay over to such Secondary Beneficiary one-half (½) of the principal then remaining of such Secondary Beneficiary's trust, outright and free of trust.

E. Once a Secondary Beneficiary attains the age of thirty-five (35) years, the Trustees shall pay over to such Secondary Beneficiary all of the principal then remaining of such Secondary Beneficiary's trust, outright and free of trust.

F. If the trust for a Secondary Beneficiary is established after he or she attains the age of twenty-five (25) years, thirty (30) years or thirty-five (35) years, as the case may be, the payment of principal hereinabove provided at those specified ages shall be made immediately or as soon as practicable.

G. The Trustees, at any time and from time to time, may pay to or for the benefit of a Secondary Beneficiary such portion of the principal and income of such Secondary Beneficiary's trust, including the whole thereof, as the Trustees, in their absolute discretion, deem appropriate for such Secondary Beneficiary's comfort and general welfare, adding to principal on the last day of the calendar year any income not so paid or expended; provided, however, no court shall have the power to order any such distribution as this provision is specifically intended to negate and eliminate any discretion granted to any court under Section 7-1.6 of the EPTL or any comparable provision under any state's law.

H. If a Secondary Beneficiary dies before he or she attains the age of thirty-five (35) years, the Trustees, upon such Secondary Beneficiary's death, shall distribute the then remaining

principal and undistributed income of such Secondary Beneficiary's trust to his or her issue then surviving, per stirpes, or if such Secondary Beneficiary leaves no issue then surviving, then to the issue then surviving, per stirpes, of whichever of Grantor's children is a lineal ancestor of such Secondary Beneficiary, or if such lineal ancestor leaves no issue then surviving, then to the Grantor's issue then surviving, per stirpes; provided, however, that any distributions under this Paragraph H. shall be subject to the terms and provisions of Article Five hereof and/or this Article Six, as the case may be.

## ARTICLE SEVEN: MANNER OF DISTRIBUTION

The Trustees, in their absolute discretion, may make any income or principal payments distributable to a beneficiary (including Secondary Beneficiary as defined in Article Six hereof) under the age of twenty-one (21) years in the following manner:

A. Take any action necessary to have a legal guardian appointed for such individual, if none has already been appointed, and make the payment to his or her legal guardian, without having to see to the proper application of such payment.

B. Spend such amount for such individual's benefit.

C. Pay any such amount for the benefit of said individual, without bond or security, to a natural parent, legal guardian or some competent adult with whom the individual resides or who has some interest in his or her welfare.

D. Name a custodian (who may be a Trustee) for such individual under the applicable Uniform Transfers to Minors Act or any other comparable act, and make such payment to a custodian, without having to see to the proper application of such payment.

**ARTICLE EIGHT: SPENDTHRIFT CLAUSE**

Notwithstanding any provision herein as to the terms or manner of payment of income or principal to any trust beneficiary, no interest shall vest in such beneficiary until actually delivered to him or her by the Trustees nor shall such interest be liable for the debts of any beneficiary, be subject to process or seizure by any court, or be an asset in the bankruptcy or insolvency of such beneficiary. No beneficiary hereunder shall have the power to anticipate, alienate or encumber his or her interest in any trust or the income therefrom. Notwithstanding any other provisions of this Agreement, if by reason of bankruptcy, judgment or other cause, any income or principal of any trust would, except for this provision, vest in or be enjoyed by some person other than the beneficiary intended by the terms of this Agreement to have or enjoy the same, the income and principal so affected may be withheld by the Trustees during the life of such beneficiary or any shorter period in the Trustees' absolute discretion. The Trustees, at any time during any such period, may nevertheless pay to, or expend for the care, support or education of such beneficiary discretionary amounts of income or principal from the share of that beneficiary and may likewise pay to or expend for the benefit of the spouse or children from such beneficiary's share discretionary amounts of such income or principal, and the Trustees may distribute any part of such income or principal in the proportions and to the person or persons, other than the personal representatives of such beneficiary, who, at the time of any such distribution, would be entitled to such share under the terms of such trust if the beneficiary whose interest is so affected were to die. Every payment or distribution made by the Trustees under this provision shall be conclusive upon all parties claiming an interest in any trust established herein.

**ARTICLE NINE: RULE AGAINST PERPETUITIES**

Any trust created hereunder shall be perpetual to the fullest extent permitted by the law of the state determined by the Trustees to be the situs of such trust. If any trust created hereunder is deemed to be subject to the law of a jurisdiction which has a rule against perpetuities or similar rule which limits the period during which property may be held in trust, then such trust (other than a trust created by the exercise of a power of appointment conferred hereunder which exercise commences a new rule against perpetuities period under the law of such jurisdiction) shall terminate in all events upon the expiration of the longest period that property may be held in trust under this Agreement under the law of such jurisdiction (including any applicable period in gross, such as 21 years, 90 years or 110 years); provided, however, that if the jurisdiction has a rule against perpetuities or similar rule which applies only to certain types of property, such as real property, the provisions of this Article shall apply only to such property. If under the law of such jurisdiction the longest period that property may be held in trust may be determined (or alternatively determined) with reference to the death of the last survivor of a group of individuals who are in being on the date that the applicable period with respect to the application of the rule against perpetuities or similar rule commenced, those individuals shall consist of all the descendants of Grantor's parents who were in being on the date such rule against perpetuities period or similar rule commenced. Upon termination of a trust pursuant to the provisions of this Article, the property of such trust shall be transferred, conveyed and paid over to the then beneficiaries of such trust's income (including beneficiaries eligible for trust payments for support or education).

**ARTICLE TEN: SUB-CHAPTER "S" QUALIFICATION**

Notwithstanding any other provision of this Agreement, if any trust established herein is funded with property which consists in whole or in part of any shares of stock of a corporation which has made or intends to make an election to be an S corporation, as defined in Section 1361(a)(1) of the Code, then the Trustees (other than a Trustee who may receive income from such trust), in their absolute discretion, may divide said shares of stock into enough separate and equal shares to provide one share for each income beneficiary of such trust and in such case, the Trustees shall hold each such share in separate trust. The Grantor intends that each separate trust shall be treated as a "qualified subchapter S trust" as defined in Section 1361(d)(3) of the Code, and directs that each income beneficiary shall properly and timely make the election for such treatment with respect to his or her respective trust pursuant to Section 1361(d)(2) of the Code. This Agreement shall be construed consistently with this intent. During the life of each income beneficiary, the Trustees shall, notwithstanding any other provision herein, pay the entire net income of his or her separate trust, at least quarter-annually, to such beneficiary. In no event shall the income or principal of each such trust be payable to someone other than its income beneficiary during the life of such beneficiary. The income interest of each beneficiary shall terminate on the earlier of such beneficiary's death or the termination of his or her trust. Upon the termination of each such trust during the life of its income beneficiary, all the assets of such trust shall be distributed to such beneficiary. Except as otherwise provided in this Article, all other provisions contained in this Agreement shall apply to any trust created hereunder.

**ARTICLE ELEVEN: TRUSTEES**

The Grantor nominates, constitutes and appoints his brother, ILIRJAN RUSI, to serve as the initial Trustee hereunder. If the initial Trustee shall fail to qualify or shall cease to serve for any reason, then the Grantor may designate a Successor Trustee (other than himself or a Successor that is related to him or subordinate to him within the meaning of Section 672(c) of the Code) to fill such vacancy, or if the Grantor fail to designate a Successor Trustee, then the Grantor nominates, constitutes and appoints his brother, BENJAMIN RUSI, to fill such vacancy as Successor Trustee.

Each appointment of a Successor Trustee must be made by a duly acknowledged instrument in writing, and the Trustees, at any time and from time to time, acting by a majority vote of the Trustees then serving, may increase their number by appointing additional Trustee(s), including but not limited to any qualifying individual or authorized corporate Trustee, but not to exceed three (3) Trustees serving at any given time.

A. If there is a vacancy with respect to any Trustee which is not filled as hereinabove provided, then the last Trustee serving hereunder may appoint his or her Successor, or in default thereof, then a majority of the adult beneficiaries and Guardians of the beneficiaries shall fill such vacancy.

B. The Grantor shall have the absolute and unrestricted right and power, at any time and from time to time, to change or remove any Trustee and in place thereof to designate any Successor Trustee by a duly acknowledged instrument in writing; provided, however, that the Grantor cannot appoint himself as a Successor Trustee or a Successor Trustee that is related or subordinate to him within the meaning of Section 672(c) of the Code. It is the Grantor's intent that (i) none of the trust property shall be includable in his estate under Sections 2036, 2038, 2041 or 2042 of the Code by virtue of this Trustee removal power; (ii) such Trustee removal power shall fall within the safe harbor test of Rev. Rul. 95-58 and the exception for estate tax inclusion enunciated by the U.S. Tax Court in *Estate of Wall*, 101 T.C. 300 (1993) and any succeeding Rev. Ruls. or case law; and (iii) any provision herein which is inconsistent with this intention shall be of no effect.

C. Any Trustee, to the extent permitted by law, may resign at any time by written notice to the last known address of any other Trustees then serving, and to the competent adult

beneficiaries of the Trust, who would be entitled to citation or service of process upon a petition for a judicial settlement of the account of such Trustee.

D. Notwithstanding anything to the contrary provided herein (including provisions authorizing delegation of duties and powers of Trustees), in no event shall any Trustee be eligible to vote or exercise discretion with respect to any matters involving invasions of principal or distributions of income in favor of himself or herself, his or her estate, his or her creditors, or the creditors of his or her estate, or in discharge or satisfaction of any of his or her legal obligations, (including support obligations), but such matters shall be completely within the discretion of and determined by the vote of any other eligible Trustee, or if none, then any such power may be exercised by the "Special Trustee", who shall be the next eligible Successor Trustee hereunder, or in default thereof, then by any person or persons designated as a Special Trustee by the remaining, ineligible Trustee, provided that the Special Trustee so named cannot be related or subordinate to the remaining, ineligible Trustee within the meaning of Section 672(c) of the Code.

E. In this or any other jurisdiction, no Trustee shall be required to furnish any bond or other security, whatsoever, for the faithful performance of his or her respective duties, or for the retention or payment of interim commissions, notwithstanding any contrary provision of law.

F. To the extent permitted by law, no Trustee shall be liable for any loss resulting to any trust created hereunder, or to any beneficiary, by reason of any act or omission not constituting gross negligence, willful misconduct or fraud.

G. Except as otherwise provided herein, any Trustee is authorized at any time, to the extent permitted by law, by an instrument in writing, to delegate to any other Trustee any duty or power conferred upon him or her hereunder, whether any such delegation relates to a discretionary or to a ministerial power. A person who has received notice of a delegation shall be entitled to rely upon its continuing effectiveness until receipt of actual notice of revocation.

H. The Trustees shall not be required to render periodic accounts in any court, but they shall submit quarterly or annual transaction statements to each current income beneficiary of any trust created hereunder or a copy of such trust's federal income tax return, if one is required, and a balance sheet in lieu of rendering annual accounts, provided that any such transaction statements itemize all transactions, charges, and opening and closing account values.

I. Any Successor Trustee shall be clothed and vested with the same duties, rights, titles and powers, whether discretionary or otherwise, as if originally named as Trustee hereunder. Upon the consent of any remaining Trustees, any Successor Trustee may accept the accounts rendered and the assets and property delivered to him or her by the predecessor Trustee as a full and complete discharge to the predecessor Trustee, and shall incur no liability or responsibility to any beneficiary under this Agreement by reason of so doing, even if any such account is later proven to be incomplete, inaccurate or untrue.

J. If at any time, or from time to time, the Grantor is responsible under federal, state or other tax laws, for the payment of income taxes on the net gains received or realized by any trust created hereunder, the Trustees are authorized (but not directed or required), in the sole and absolute discretion of the Trustees, to reimburse the Grantor, or to pay directly to the appropriate taxing authorities, an amount or amounts, equal to all or any portion of such taxes.

**ARTICLE TWELVE: POWERS OF TRUSTEES**

In addition to those powers conferred by the common law and the statutes of New York governing trusts, the Trustees and any Successors thereto shall have the absolute right and discretion to exercise the following powers:

A. To retain any property, including cash and unproductive property, any securities in any closely held corporation, and any ownership or beneficial interest in any business entity or enterprise, for any length of time, without regard to the proportion such property may bear to the entire amount of or the principal of any trust created hereunder, and without regard to the fact that any such property may not be of a kind or character permissible for investment by the Trustees.

B. To invest and reinvest from time to time any property held hereunder.

C. To designate one or more persons and/or a bank or trust company to be ancillary Trustees, in jurisdictions, domestic or foreign, in which ancillary administration may be necessary, and any such ancillary Trustees shall have all of the rights, powers and discretion conferred upon the Trustees by this Article and elsewhere hereunder.

D. To collect and receive any and all monies and other property due or owing or to become due or owing to any trust created hereunder, and to give full discharge and acquittance therefore.

E. To lend money or other property to the Grantor, any beneficiary (including a beneficiary serving as Trustee hereunder provided that such Trustee shall not vote or participate in the decision to make such a loan to himself or herself), individual, partnership, estate, trust, association or corporation, even though any such loan may not be of a kind or character permissible for investment by the Trustees.

F. To prosecute, settle, adjust, compromise, forgive, contest, defend, submit to arbitration, collect, pay or discharge any claims or demands belonging to or asserted against any trust created hereunder, upon such terms as the Trustees may deem proper.

G. To sell, transfer, convey, lease, exchange, pledge, mortgage, grant options with respect to, or otherwise dispose of or deal with all or any part of the property of any trust created hereunder.

H. To abandon any property, real or personal which the Trustees may deem to be worthless or not of sufficient value to warrant keeping or protecting; to abstain from the payment of taxes, water rents, assessments, repairs, maintenance and upkeep of any such property; to permit any such property to be lost by tax sale or other proceedings, or to convey any such property for a nominal consideration or without consideration so as to prevent the imposition of any liability or the incurring of additional expenses by reason of the continued ownership thereof.

I. To borrow from others or from themselves.

J. To exercise, sell, dispose of, acquire or otherwise deal with options of all types; to purchase, receive, trade, sell and deal with securities on margin or otherwise; and to pledge and hypothecate securities.

K. To lease or grant options on any real or personal property for periods which may extend beyond any time limitations provided by law.

L. To obtain insurance of any kind, nature or description whatsoever, on any property held hereunder.

M. To vote in person or by proxy on all stocks in any trust created hereunder.

N. To continue the operation of any business in which any trust created hereunder may have an interest, whether such interest is a partnership interest or limited liability company (“”LLC”) membership interest, or a holder of shares of stock in a corporation conducting such business or businesses; and to purchase or otherwise acquire any business interest and to operate the same; and in connection with any business so continued, purchased or otherwise acquired, to have the following authority and to exercise the following powers, as they may deem advisable: to settle and discontinue any of them, at such time or times and upon such terms and conditions which, in the judgment of the Trustees are for the best interests of any trust created hereunder; to take part in the management of such business and to delegate such duties, with the requisite powers, to any employee, manager, partner or associate, without liability for such delegations; to reduce, expand, limit or otherwise fix and change the operation or policy of any such business and to act with respect to any other matter in connection with any such business; to subject to the risks of any such business, any part of any trust estate, not invested in the said business or businesses, for such term or period as the Trustees may determine; to advance money or other property to any such business; to make loans, subordinate or otherwise, of cash or securities to any such business and to guarantee the loans of others made to any such business; to borrow money for any such business from any lender, either alone or with other persons interested therein, and to secure such loan or loans by a pledge or mortgage of any part of any trust estate; to select and vote for directors, partners, managers, associates and officers of any such business;

to act as directors, general or limited partners, associates and officers of any such business and to compensate such directors, partners, associates and officers, including any person who is a beneficiary or a fiduciary under this Agreement; to make a Subchapter S election under the Code; to deposit securities with voting trustees; to enter into stockholders' agreements with corporations in which any trust estate has an interest and/or with the stockholders of such corporations; to sell any such business, any interest in any such business, or any stock or other securities representing the interests of any trust estate in any such business; to carry out the terms of any option or buy-sell agreements; to liquidate, either alone or jointly with others any such business or any interest in any such business; and, generally, to exercise any and all powers as they may deem necessary with respect to the continuance, management, sale or liquidation of any such business.

O. To make or decline to make any and all elections permitted by state, Federal and foreign tax laws, without regard to the effect any such elections may have upon the respective interests of the beneficiaries hereunder.

P. To employ such attorneys, clerks, agents, accountants, investment counsel and custodians in the transaction of the business of any trust created hereunder.

Q. To determine whether and to what extent receipts should be deemed to be income or principal, whether and to what extent expenditures, and depreciation and depletion expenses, should be charged against income or principal, and what other adjustments should be made between income and principal, except that stock dividends shall be allocated to principal.

R. To execute and deliver all contracts, deeds and other instruments of any and every character that may be deemed necessary by the Trustees.

S. To divide any property in any trust established hereunder into two (2) separate trusts so that one such trust will have an inclusion ratio (as defined in Section 2642(a)(1) of the Code) of one (1) and the other such trust will have an inclusion ratio of zero (0).

T. To change the situs of any trust created herein to any jurisdiction within the United States of America and have the laws of such other jurisdiction apply to the construction and administration of any such trust.

U. To purchase or otherwise acquire any policy or policies of insurance on Grantor's life and to exercise any rights under such policy or policies, including without limitation, the right to (i) borrow against said policy or policies; (ii) surrender, cancel or reduce said policy or policies; or (iii) elect to convert said policy or policies to any other plan or plans of insurance. The Trustees may use any asset of any trust created herein, including principal or income, to pay any premium or other payment due on such policy or policies. However, in no event shall the exercise of such power be construed to give Grantor any incidents of ownership in such policy or policies or to require the Grantor to pay any premiums due on such policy or policies.

V. To make any division and distribution of the property pursuant to any trust created hereunder, in whole or in part, in cash, kind, securities or other property, without regard to the tax basis or character of such property or other tax consequences resulting from such distribution in kind; and to determine the equality or proportionality of any division or distribution in kind by reference to value only, and without any requirement of equitable adjustment by reason of any disproportionate allocation of potential tax burdens or benefits attributable to the basis or character such property in kind.

W. Notwithstanding anything to the contrary contained herein, no power enumerated herein or accorded to the Trustees by common law or statute, shall be construed to enable any person or entity to purchase, exchange or otherwise deal with or dispose of the principal or income of any trust created herein for less than an adequate or full consideration in money or money's worth, or to enable any person or entity to borrow the principal or income of any such trust, directly or indirectly, without adequate interest or security (except as provided in this Article).

X. Only one (1) Trustee shall be required to sign checks against any trust bank accounts, brokerage accounts, contracts, deeds, loan documentation, settlements, applications or pledge trust assets on behalf of the Trust. It is the Grantor's intention that either Trustee, acting solely, shall have the binding authority to act on behalf of the Trust.

Y. For convenience of administration or investment, the Trustees of all trusts created hereunder may invest the assets of multiple trusts in a single fund, assigning them undivided interests in such common fund, dividing the income proportionately and accounting for them separately, and furthermore the Trustees may merge or consolidate any trust created hereunder together with any other trusts having the same Trustees and substantially the same dispositive provisions.

Z. The Grantor recognizes that in the exercise of their powers the Trustees and/or their attorneys may be placed in a position of self-dealing or of having or representing potential or actual conflicting interests, and the Grantor hereby directs that such self-dealing or conflicting interests shall not be a basis for any Trustee, or any attorney selected by him or her, being disqualified or limited, or not participating, in the exercise of powers or representation with respect to the administration of any trust created hereunder, nor with respect to any closely-held business interest, nor shall any Trustee exercising such powers be surcharged or held to a higher degree of fiduciary duty by reason of such self-dealing or conflicting interests than would be otherwise applicable.

AA. To apply any sum that is payable to or for the benefit of any beneficiary who, in the judgment of the Trustees, is incapable of making proper disposition thereof, by payments in discharge of the beneficiary's bills, or to anyone with whom the beneficiary resides or who has the care or custody of the beneficiary, temporarily or permanently, all without intervention of any guardian, committee or Trustee, and without regard to other resources that the beneficiary may have or the duty of any other person to support the beneficiary.

BB. The Grantor shall have the power at any time (i) to acquire Trust corpus by substituting other property of an equivalent value and (ii) to borrow Trust corpus and income without adequate security; provided, however, that the Trustees shall have the right at any time to eliminate either or both of the aforesaid powers or to reinstate such powers previously eliminated by a duly acknowledged instrument in writing. The Trustees shall also have the right to irrevocably release their said authority to eliminate or reinstate such powers. Moreover, Grantor shall have the right at any time to irrevocably release and relinquish his said powers.

CC. To give to the children of the Grantor, by a written instrument delivered to such child and filed with the Trust records, a testamentary General Power of Appointment, within the meaning of Section 2041 of the Code, over all or a portion of such child's share of any trust property (including a power the exercise of which requires the consent of one or more Trustees), or to eliminate, in whole or in part, any such power previously created. The Trustees shall also have the right to irrevocably release their said authority to eliminate or reinstate any General Power of Appointment. The Trustees shall have absolute discretion in exercising their power under this Paragraph. In authorizing such actions, it is the Grantor's hope (but not direction) that (i) a General Power will be kept in effect when the Trustees believe that the inclusion of the property affected thereby in the Grantor's child's estate may achieve a significant savings in transfer taxes by being subject to an estate tax rather than a tax under Chapter 13 of the Code imposed on the property subject to such General Power; and (ii) that a General Power will be eliminated when the Trustees believe that it would permit the greater use of the GST exemption provided under Section 2631(a) of the Code.

## **ARTICLE THIRTEEN: LIFE INSURANCE POWERS**

With respect to any life insurance policies purchased by the Trustees, or at any time held as part of the Trust funds, the following special rules shall apply:

A. The Trustees may, in their discretion, pay any premiums or other charges from Trust income or principal. If the Trust funds are inadequate to pay such premiums or charges, the Trustees may, in their discretion, do one or more of the following: (1) use any automatic premium loan feature; (2) borrow against any policy cash reserves (whether or not on the policy for which premium or charges will be paid); or (3) elect any automatic non-forfeiture feature. The Trustees have no duty to do any of these unless they have received specific written notice that a premium or charge has not been paid.

B. Any insurance policies, no matter how acquired (including, but not limited to direct purchase, acquisition by gift, conversion, reissue, or consolidation), should be listed on Schedule "A", but failure to do so does not affect the Trust's policy ownership.

C. The Trustees may, in their discretion, refuse to enter into or maintain any litigation, endorse policy payments, or take other action respecting any trust insurance policies, until they have been indemnified against all expenses and liabilities which, in their judgment, may be involved in such action.

D. The Trustees need not inquire whether or not any of them has been designated the beneficiary of any insurance policy or other death benefit, and they need to act with respect to any such policy only after receipt of written notice that any of them is a beneficiary.

**ARTICLE FOURTEEN: DEFINITIONS**

A. For all purposes of this Trust, the words "children", "grandchildren" and "issue" shall include any and all adopted persons and after-born persons, but such words shall not be construed or interpreted to include any illegitimate persons.

B. For all purposes of this Trust, a disposition to the issue of a person "per stirpes" shall be deemed to require a division into a sufficient number of equal shares to make one such share for each child of such person living at the time such disposition becomes effective and one share for each then deceased child of such person having one or more descendants then living, regardless of whether any child of such person is then living, with the same principal to be applied in any required further division of a share at a more remote generation, and no distribution at any generational level shall be per capita.

**ARTICLE FIFTEEN: MISCELLANEOUS**

A. This Trust shall be governed by and construed according to the laws of the State of New York.

B. Any notices or other communication required or permitted by this Agreement to be delivered to or served on a party shall be deemed properly delivered to, served upon and received by such party when personally delivered, or, in lieu of such personal service, when deposited in the United States Mail, certified mail with postage prepaid, to the last known address of such party.

C. The headings in this Trust are inserted for convenience only and are not a part of this Trust.

D. Whenever the context of this Trust requires, the masculine gender includes the feminine or neuter, and vice versa, and the singular number includes the plural, and vice versa.

E. All tax-related terms mean the same things in this Agreement as they mean in the Code and any Regulations thereunder.

***IN WITNESS WHEREOF***, the parties hereto have set their hands and seals as of the day and date first above written.

**GRANTOR:**

SELIM RUSI

**TRUSTEE:**

ILIRJAN RUSI

STATE OF NEW YORK )
COUNTY OF New York ) ss.:

On the 31 day of October, in the year 2011, before me, the undersigned, personally appeared SELIM RUSI, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

Cotam Van
Notary Public, State of New York
No. 01VA6143219
Qualified In New York County
Commission Expires April 3, 2014

Notary Public

STATE OF NEW YORK )
COUNTY OF New York ) ss.:

On the 31 day of October, in the year 2011, before me, the undersigned, personally appeared ILIRJAN RUSI, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

Notary Public

Cotam Van
Notary Public, State of New York
No. 01VA6143219
Qualified In New York County
Commission Expires April 3, 2014

**Schedule "A"**